FRED WILLIAMS, Appellee, v. WALTER C. BURNSIDE, Appellant.

240

DECEMBER 14, 1928.

*Dalton & Knop*, for appellant.

*Charles S. White*, for appellee.

MORLING, J.—On September 19, 1919, plaintiff and Gale sold to defendant a North Dakota half-section farm. Settlement was made March 1, 1920, on which date defendant executed, as a part thereof, the note in controversy, for $4,800, due March 1, 1925, naming Gale as payee. Gale indorsed the note to plaintiff,— when, does not appear from the record here, unless it was March 1, 1921. Payment of interest to the last named date is indorsed. Rescission is not involved. Fraud in the sale is pleaded by way of defense, and as a counterclaim, and sufficiently to show right of recoupment. The contract was a North Dakota contract. By way of answer to counterclaim, besides a denial, plaintiff pleads the North Dakota six-year statute of limitations to an action for fraud. No question of pleading is raised. The fraud pleaded is substantially that of which defendant offered evidence, as fol-

lows: Defendant was a farmer, who had lived in Iowa all of his life. On September 19, 1919, plaintiff showed defendant a number of farms in North Dakota, among which was one purchased by defendant on that date. Defendant says that he told plaintiff that he was not familiar with the country, and would have to rely on plaintiff's word; that plaintiff told defendant "that he would tell me the straight of it. He said he was in a position he didn't have to sell land for a living;" that plaintiff told defendant the farm "was good tillable land, subject to the best cultivation * * * raised as good crops the same as any average Iowa farm * * * it all drained well;" that plaintiff said there were no noxious weeds or grasses, that "the water was good, clear, as good as the best water in Iowa," that the market value of the land was $100 per acre; that defendant believed and relied on those statements, and on the strength of them entered into the contract; that, the next summer or fall, defendant found low wet spots on the land; that it did not drain well, was heavy gumbo land, in wet weather it would not dry out as it should; that he found quack grass, King head, and wild oats covering about one fourth of the farm. He says that he found the water to be alkali, not fit for use for the house or for stock or engine; that he found the reasonable market value of the land about the date of purchase to be $60 or $65 per acre. Defendant testified that he could not observe the weeds and the condition as to drainage at the time he made the purchase, and did not observe or test the water. That the weeds were there at the time of the purchase is testified to by another witness. There is corroborating testimony as to the weeds and their extent, and as to the swale and water. There was testimony that the land was worth, at the time of the sale, $50 per acre; that the soil would hold water, and the farm would not produce crops equal to an average farm in Iowa. Another witness valued the land at $50 to $60 an acre at the time of the defendant's purchase, and said that there were 15 to 20 acres in a low place, to which there was no drain that he "could tell at all." Plaintiff testified that he had known the land for more than 20 years; that it was worth $100 per acre; that there was no wet place on it but what could be farmed; that there might have been some of the weeds named on the farm, but it was a very clean farm; that the water was potable, and as good as the average in that vicinity.

242

He denied making the representations, except that the land was worth $100 per acre. Plaintiff testified that everything he told defendant he told for the purpose of having defendant believe it; that he did not intend to misrepresent anything.

I. Plaintiff argues in general terms that:

"The evidence of defendant is so contradictory, incredible, so untrustworthy on its face, and defendant is guilty of such laches, that a court would be warranted in taking the case from the jury and directing a verdict for the plaintiff * * * appellant made an examination of this land, and there was nothing of the alleged representations * * * but what he could have ascertained the truthfulness or the falsity of said alleged representations by using his vision, as to weeds, as to the lay of the land, as to the productiveness of the soil. * * * It is not sufficient to place in the record a prattle of fraud or a fairy tale concerning alleged misrepresentations, but there must be substantive evidence that submits itself to a court of reason."

Plaintiff also argues that defendant could and did investigate; that there is no showing of lack of productivity. No attack is made upon any particular specification of fraud,—for instance, the representation as to value, or plaintiff's knowledge of the productiveness of Iowa farms. No question is made that he did not make such representations as were made as of his own knowledge. This is not a suit in equity for rescission, triable in equity, but is at law for damages. Laches is not shown, and is not a defense at law. It is not for us to weigh the evidence. Whether the plaintiff made the representations charged and denied; whether, if made, they were then known by plaintiff to be false, or whether they were made as of his own knowledge; whether they were material, made with intent to deceive; whether defendant was, in the circumstances shown, justified in relying on, and was deceived by, the representations, to his injury; and the extent of his damage, if any, were all questions of fact, which defendant was entitled to have submitted to the jury, and on which, on their favorable finding, he would be entitled to recover. *Aldrich v. Worley*, 200 Iowa 1009; *Commercial Sav. Bank v. Kietges*, 206 Iowa 90; *Smith v. Smith*, 206 Iowa 606; *Hills Sav. Bank v. Cress*, 205 Iowa 306; *Foreman v. Dugan*, 205 Iowa 929. To avoid possible misinterpretation, perhaps we

should add that we are not here passing on the question whether, on this record, alleged representations as to value and as to comparison between the land in question and Iowa farms, and between the water on the farm with the water of Iowa, were, if made, the subject of separate claims for recovery, in themselves severally actionable, or sufficiently shown to have severally deceived defendant; nor are we discussing the sufficiency of the evidence of damages to sustain recovery on the several alleged misrepresentations, standing each by itself,—the others independently of the representations of value. No such question was raised below, or is raised here. Defendant's case, as submitted, is based on the alleged representations as an entirety, and he was entitled to go to the jury upon them as a whole. *Dimond v. Peace R. L. & D. Co.*, 182 Iowa 400.

II. Plaintiff's principal contention is that the counterclaim is barred by the North Dakota statute (Compiled Laws North Dakota [1913], Section 7375, declaring limitation of six years  for such causes of action as that for which the counterclaim is made). Plaintiff also offered in evidence Section 7449, Compiled Laws North Dakota (1913), prescribing the requisites of a counterclaim. He also offered in evidence the report of the case of *Roether v. National Union Fire Ins. Co.*, 51 N. D. 634 (200 N. W. 818). Statutes of limitation affect the remedy only, and that of the forum ordinarily governs. *Bruce v. Luck*, 4 G. Greene 143; *Meek v. Meek*, 45 Iowa 294, 297; 37 Corpus Juris 729, 731. It is a statute of repose, one of presumption of non-existence, or payment or discharge of the cause of action, and does not destroy the cause of action. *County of Burleigh v. County of Kidder*, 20 N. D. 27 (125 N. W. 1063, 1065); *Meek v. Meek*, 45 Iowa 294, 297; *Dinnie v. United Commercial Travelers*, 41 N. D. 42 (169 N. W. 811); 37 Corpus Juris 684.

Section 11014, Code of 1927, declares:

"When a cause of action has been fully barred by the laws of any country where the defendant has previously resided, such bar shall be the same defense here as though it had arisen under the provisions of this chapter; but this section shall not apply to causes of action arising within this state."

The plaintiff had previously resided in North Dakota, but it

does not appear that the counterclaim had been fully barred by the laws of his state. It is provided by Section 11019, Code of 1927:

"A counterclaim may be pleaded as a defense to any cause of action, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred, and was not barred at the time the claim sued on originated; but no judgment thereon, except for costs, can be rendered in favor of the party so pleading it."

The presumption is that the statute of North Dakota is the same. *Kellum v. Robinson*, 193 Iowa 1277, 1280. The statute of counterclaim offered by plaintiff does not show the contrary. The general rule is:

"The defense of reduction or recoupment which arises out of the same transaction as the note or claim survives as long as the cause of action upon the note or claim exists, although an affirmative action upon the subject of it may be barred by the statute of limitations. But a counterclaim, even where by statute it may consist of any matter arising out of contract or tort, whether it arises out of the contract or transaction sued upon or not, if barred by the statute of limitations, is available only for recoupment, although for that purpose it may be used as long as plaintiff's cause of action exists." 37 Corpus Juris 804, Section 149.

See, also, 37 Corpus Juris 1082.

We are not called upon by this record or by the arguments to discuss the question when the respective causes of action accrued, nor when this action was commenced. Plaintiff's principal point in this connection is that defendant did not prove that he was the owner of the counterclaim "at the time the limitation expired." But the cause of action or of recoupment set up in the counterclaim in its inception accrued to and was owned by defendant. It is not for defendant to prove that he never assigned or parted with his cause of action or his right to recoupment or offset, or that his right has not been otherwise discharged. His claim is not an article of commerce or of property or rights which in ordinary experience change freely and

frequently in condition or ownership, as in the cases cited by plaintiff. Defendant's claim inhered in and was a part of the transaction on an item of which the plaintiff is seeking his recovery. The presumption is that, as defendant was, at the beginning, the owner of his right of recoupment or counterclaim, he is still such. See *Roberts v. Morse*, 190 Iowa 1344, 1350; *State v. Dexter*, 115 Iowa 678, 680; *In re Estate of Fisher*, 128 Iowa 18; *Riggs v. Gish*, 201 Iowa 148; 22 Corpus Juris 90.

On the record here, the counterclaim to the extent of the amount owed plaintiff on the note sued on is not barred.—*Reversed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.