JOHN VALENTE, ADMINISTRATOR, ETC., OF JOSEPH VALENTE, DECEASED, APPELLANT, v. LINA BOGGIANO, INDIVIDUALLY AND AS ADMINISTRATRIX, ETC., OF JOHN BOGGIANO, DECEASED, RESPONDENT.

Submitted October 31, 1930—Decided May 18, 1931.

For the appellant, *Bernard Mindes.*

For the respondent, *Lionel P. Kristeller.*

The opinion of the court was delivered by

PARKER, J. The question in this case arises under the statute of limitations as applicable to a promissory note which did not fall due until after the payee died, in view of the fact that no administration of the payee's estate was taken out for some ten years after his death. The trial court granted a nonsuit on the ground that the statute of limitations began to run at the date of maturity of the note. The exact dates are as follows:

The note, to order of Joseph Valente, bears date April 1st, 1913, payable at one year.

Valente died intestate March 5th, 1914, leaving his widow, the plaintiff, and children.

The note fell due April 1st, 1914.

On the back are endorsed two so-called "renewals," each for one year, dated June 24th, 1914, and July 22d, 1915, which need no special consideration.

Administration of Valente's estate was granted to his widow in the State of New York, January 16th, 1924, and shortly thereafter an exemplified copy of the letters was filed in the office of the register of the Prerogative Court, as provided by the act of 1896, page 173. *Comp. Stat., p.* 2265, *pl.* 21.

This action was begun June 14th, 1927, or some thirteen years after the due date of the note, and nearly eleven years after the expiration of the second so-called renewal, if that had any efficacy, which is doubtful, to say the least.

The first section of our statute of limitations (*Comp. Stat., p.* 3162) provides, in part, that "all actions of debt, founded upon any lending or contract without specialty * * * and all actions of account and upon the case" (with exceptions not relevant here) "shall be commenced and sued within six years next after the cause of such actions shall have accrued, and not after."

The view taken by the majority of courts in other jurisdictions, touching the precise point before us, is that a cause of action cannot be said to accrue until there is some definite person legally qualified to enforce it; and hence, that if there is no such person when, for example, a note matures, the "cause of action" waits, and with it the commencement of the six years period, until the needed person is ascertained. The leading case to this effect is *Murray* v. *East India Co.,* 5 *Barn. & Ald.* 204, decided in 1821, and followed by most of our state courts. 37 *Corp. Jur.* 1034; 17 *R. C. L.* 751. The case in this state of *Stevenson* v. *Markley,* 72 *N. J. Eq.* 686; *affirmed,* 73 *Id.* 731, is cited and relied on in support of the proposition just stated.

We feel constrained to dissent from the view adhered to by the outside authorities in general, and consider that Stevenson *v.* Markley is not controlling of the case in hand. Some of our American courts have followed Murray *v.* East India Co., with obvious and expressed reluctance. *Riner* v. *Riner,* 166 *Pa. St.* 617; 31 *Atl. Rep.* 347, and *Hoiles* v. *Riddle,* 74 *Ohio St.* 173; 78 *N. E. Rep.* 219, which latter case, however, was one of a deceased debtor. In California, the doctrine of Murray *v.* East India Company has been frankly repudiated, and the "cause of action" held to "accrue" when suit could have been brought by the deceased if living. *Sullivan* v. *Gillon,* 26 *Cal. A.* 421; 147 *Pac. Rep.* 215; *Cortelyou* v. *Imperial Land Co.,* 166 *Cal.* 14; 134 *Pac. Rep.* 981; *Tynan* v. *Walker,* 35 *Cal.* 634; 95 *Am. Dec.* 152. We are not bound by the ruling in Murray *v.* East India Company, for although our statute is modeled on 21 *Jac. I. c.* 16, passed in 1663, and our courts as a rule adopt the construction of a statute taken over from another jurisdiction that had been previously put upon such statute by the courts of such jurisdiction, decisions by such courts made after adoption of the statute in this state are not within the rule. *Neilson* v. *Russell,* 76 *N. J. L.* 655; *Hopper* v. *Edwards,* 88 *Id.* 471, 476. The English statutes of limitation were declared in force in the province of New Jersey in 1728 (*Allinson's Laws, p.* 72), and were re-enacted by the state legisla-

ture as early as 1799. *Pat.* 352. The Murray case, as we have seen, was decided in 1821, and hence is without any controlling force.

The case of *Stevenson* v. *Markley, supra,* was a bill for an accounting by the administrator of a deceased former ward against the executor of her guardian. The ward came of age in January, 1883, and died on Christmas day, 1885. The guardian died February 26th, 1905. No administrator of the ward was appointed until March 1st, 1906, and the bill was filed shortly thereafter. Vice-Chancellor Garrison decided the case orally and in respect of matters relevant to the present discussion held (1) that the Orphans Court was without jurisdiction; (2) that though the statute mentions actions of account, yet as the relation of guardian and ward is a continuing trust, so long as the ward's status is not challenged the statute will not run; (3) that down to the death of the ward there was no running of the statute (page 695); (4) that with respect to the period after the death of the ward, there was no one to call the guardian to account until the administrator was appointed; that "it may be proper to hold" that the relation between this administrator and the guardian "was not a direct, subsisting, continuing trust outside the statute but was a trust by implication and therefore within the statute of limitations;" but assuming this, and applying the rule of Murray *v.* East India Company, the statute did not begin to run until the appointment of the administrator. On appeal, 73 *N. J. Eq.* 731, 732, we said that we agreed that the statute did not bar the relief sought, and that the facts set forth in the amended bill *prima facie* excused the seeming laches of the complainant, adding: "These conclusions are well vindicated by his opinion." But we reserved approval of the proposition that the Orphans Court had no jurisdiction of the particular accounting, and pointed out that the action of account (*Comp. Stat., p.* 8) was not available against guardians themselves, and that by other statutes cited, the Orphans Court had full jurisdiction in the premises. This would seem to hold open the alternative theory that even after the death of the ward the guardian-

ship continued as an actual and subsisting trust immune from the statute of limitations and still under the supervision of the Orphans Court. On that theory, application of the rule in Murray *v.* East India Company was needless.

Morever, we think there is a valid distinction between a trust relation not terminated and perhaps not terminable until a demand for a final accounting on the one hand, or an application to account by the trustee on the other, and a liquidated debt represented, as in this case, by a promissory note. In the former case the trust relation simply continues, and the possession by the trustee of property or money is the possession of the *cestui que trust* until a condition of antagonism develops. *Dyer* v. *Waters,* 46 *N. J. Eq.* 484. In the latter case the parties are at arms' length from the beginning or in any event at maturity of the note, one a debtor and the other a creditor. We consider that when the note falls due, there is a cause of action, not enforceable it is true until there is some one to enforce it, but on the other hand not within the qualification of section 4 relating to infants or insane persons. Even this section applies only to infancy or insanity existing at the time of accrual of the cause of action, and if the statute has already begun to run before such disability supervenes, it continues to run. *Pinckney* v. *Burrage,* 31 *N. J. L.* 21. The courts have almost uniformly treated the statute as one of repose, as remedial, and to be liberally construed, and the rule in the Murray case is distinctly out of step with such construction. Had the legislature chosen so to do, it might well have included a decedent's estate not in course of administration as a case of "disability" deferring the operation of the statute. But as an infant may sue by next friend, or a lunatic by committee, notwithstanding the disability, so may those interested in the estate, as pointed out by the California court, procure the appointment of a representative qualified to sue. We can see no reason in logic or law for saying that if a note falls due a day before the death of the holder the statute will run, while if it falls due the day after, the statute will not run and remain impotent indefinitely until some one procures the appointment of an administrator.

But such is the necessary effect of the rule in the Murray case. We are not bound to follow it, and as stated, are unwilling to do so. We concur in the views of the California Supreme Court in the cases cited from that state; and conclude therefore that the judgment of nonsuit under review should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.